<u>Not For Publication</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUSAN FREEMAN, : | Civil Action No. 06-3766 (FSH) |
|     Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | July 25, 2007 |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
|     Defendant. : | |
| : | |

**<u>HOCHBERG, District Judge.</u>**

This matter comes before the Court upon Plaintiff Susan Freeman's ("Plaintiff") motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner"), pursuant to the Social Security Act, as amended, 42 U.S.C.A. §405(g) (2007). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.     Background.**

Plaintiff, a 47-year-old female with a bachelor's degree, first applied for Disability Insurance Benefits ("DIB") on April 12, 1995, alleging disability since October 20, 1994 due to Crohn's disease. (Tr. 30). She worked as a freelance supervisor in Merrill Lynch's Creative Service Department before she applied for disability benefits. (Tr. 461). On July 21, 1995, the Social Security Administration ("SSA") determined that Plaintiff's Crohn's disease met the severity of Section 5.07 of the Listing of Impairments, set forth at 20 C.F.R. Pt. 404, Subpt. P,

App. 1. (Tr. 34). The SSA made a comparison point decision ("CPD") on May 28, 1997, at which it determined that Plaintiff's disability continued to meet the severity of Listing Section 5.07. (Tr. 35). However, upon conducting a second continuing disability review on June 12, 2001, the SSA determined that Plaintiff's disability had ceased as of July 2001, and that benefits were payable only through September 2001. (Tr. 36).

After being denied upon reconsideration, Plaintiff filed a request for a hearing and on November 15, 2003, Administrative Law Judge ("ALJ") Michael Noorigian found that Plaintiff was not disabled as of July 2001. (Tr. 364-368). Following an appeal and remand, ALJ Noorigian affirmed his previous ruling on October 28, 2004. (Tr. 396-399). Plaintiff appealed the decision a second time, but on December 16, 2005, ALJ Richard DeSteno affirmed the SSA's finding that Plaintiff's disability ceased as of July 2001. Plaintiff sought Appeals Council review on February 11, 2006, but the Appeals Council found no grounds for review. (Tr. 6-8). Plaintiff returned to full-time employment after September 1, 2002, and concedes that as of that date, she no longer meets the disability criteria. Plaintiff is thus only contesting the denial of benefits for the period from July 2001 through August 2002. Accordingly, this Court addresses only whether Plaintiff's disability continued after July 2001 and, if so, whether it ceased in any month prior to September 2002. (Tr. 23).

In reaching his decision, ALJ DeSteno considered the medical reports of Plaintiff's treating physicians and consultive examiners. Plaintiff was first diagnosed with Crohn's disease of both the small intestines and large intestine in 1978. Following the diagnosis, she had continuous attacks of Crohn's disease and was on intensive medical treatment. In 1994, Plaintiff had 15 to 20 bowel movements per day with mucous and some blood. (Tr. 232). On May 28,

1997, the SSA made its comparison point decision and found Plaintiff still disabled.  From March 1996 through January 1997, Plaintiff suffered from severe weight loss. At one point, she weighed only 97.5 pounds.  (Tr. 206).  Plaintiff still had three to four bowel movements daily and physical examinations showed that she had a tender abdomen with hemorrhoids. (Tr. 66).

However, on July 6, 2001, the SSA advised Plaintiff that she was no longer considered disabled as of July 2001, and that she would receive her last disability check in September 2001. The SSA based its decision on medical reports that indicated that Plaintiff's health had improved since the CPD on May 28, 1997. (Tr. 37).  Plaintiff's three colonoscopy examinations from 2000 to 2002 revealed no current ongoing bowel disease and the 2001 colonoscopy showed evidence of only old inflammatory bowel disease. (Tr. 348, 351, 354).  Both Plaintiff's treating doctor and the consultive examiners stated in their reports that Plaintiff's Crohn's disease had improved.  Dr. Michael Lupovici, Plaintiff's treating gastroenterologist, stated in a report dated May 25, 2000, that Plaintiff's Crohn's disease was in good control and that she was doing well. (Tr. 247).  At that point, she was not taking Asacol, her previous medication, and there was no indication of diarrhea.  Plaintiff was examined on May 7, 2001 by Dr. Samuel Wilchfort, a consultive examiner.  Dr. Wilchfort noted that Plaintiff was not using any conventional medicine and that she was following a special diet as a form of alternative care. Her weight had not been dropping and she only had occasional flare-ups. (Tr. 256).  Plaintiff was also examined on November 29, 2001 by Dr. Celia Roque, another consultive examiner.  Dr. Roque found that Plaintiff's Crohn's disease had improved with occasional flare-ups.  Plaintiff maintained her weight from previous examinations at approximately 134 pounds.  Plaintiff was found to be capable of performing activities of daily living and instrumental activities of daily living. (Tr. 264).  Dr. Demitrios

Perdikis, who had treated Plaintiff since October 2001, also stated on August 5, 2002 that Plaintiff's Crohn's disease was controlled. (Tr. 338). Finally, on September 23, 2003, Dr. Lupovici stated in a report that Plaintiff's prognosis was fair and that she was capable of low stress jobs. (Tr. 341-345).

Based on the medical evidence, the ALJ found that Plaintiff was capable of returning to past relevant work and that her disability ceased as of July 2001. (Tr. 29). Plaintiff argues that the ALJ was mistaken and that substantial evidence exists in the record to support a finding that the Social Security Administration erroneously terminated her benefits in July 2001 because she was entitled to DIB through August 2002, a month prior to her return to work at the substantial gainful activity level. In the alternative, Plaintiff argues that she was entitled to a trial work period beginning in July 2001.

## II.     Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision. 42 U.S.C.A. §405(g); *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (D. Pa. 1999) (quoting *Consolidated Edison*, 305 U.S. at 229). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

## III.    Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. §423(d)(1)(A).  A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3) and §1382c(a)(3)(D).  An individual will be found disabled only if the impairment is so severe that he or she is not only unable to do his or her previous work, but cannot, considering his or her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the individual is presently engaged in substantial gainful activity.  If so, the individual will be found not disabled without consideration of his or her medical condition.  20 C.F.R. §404.1520(b) and §416.920(b).

Step Two: Severe Impairment.  If the individual is not engaged in substantial gainful activity, he or she must then demonstrate that he or she suffers from a severe impairment or combination of impairments that significantly limits his or her ability to perform basic work activities.  20 C.F.R. §404.1520(c) and §416.920(c).

Step Three: Listed Impairment.  If an individual demonstrates a severe impairment, the

5

Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1, or is the equivalent of a listed impairment. If the individual has such an impairment, the Commissioner will find the individual disabled. 20 C.F.R. §404.1520(d) and §416.920(d).

Step Four: Residual Functional Capacity. If the individual does not have a listed impairment, the fourth step is to determine whether, despite his or her impairment, the individual has the residual functional capacity to perform his or her past relevant work. Residual functional capacity is defined as what the claimant can still do despite his or her limitations. If the individual has the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §404.1520(e)-(f) and §416.920(e)-(f).

Step Five: Other Work. Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if he or she is able to perform other work functions. If he or she cannot do so, the individual will be found disabled. 20 C.F.R. §404.1520(g) and §416.920(9).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Secretary of Health and Human Services*, 722 F. 2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion in the first four steps, but if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his or her past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the

review, the Commissioner does not review the claim further.  20 C.F.R. §404.1520(a)(4) and §416.920(a)(4).

**IV.   Analysis**.

Administrative Law Judge Richard DeSteno performed the required five-step analysis in evaluating Plaintiff's claim.  His decision was based on medical evidence regarding her residual functional capacity and the requirements of her previous relevant work.  At Step One, he found that Plaintiff did not engage in substantial gainful activity from July 2001 to August 2002.  At Step Two, the ALJ found that Plaintiff still had severe chronic Crohn's disease during that period.  However, at Step Three, the ALJ found that Plaintiff's impairments were not singly or in combination of listings level severity from July 2001 to August 2002. 20 C.F.R. §404.1594(f)(2).  Her Crohn's disease was not accompanied by clinical evidence of persistent or recurrent intestinal obstruction, persistent or recurrent systemic manifestations, intermittent obstruction, or weight loss, as described under former and then applicable Sections 5.07 and 5.08 of the Listing of Impairments, set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 24).  At Step Four, the ALJ determined that Plaintiff's past relevant work as a Creative Services Department Supervisor at Merrill Lynch, as she performed it, did not require the performance of work-related activities beyond her residual functional capacity as of July 2001.  The ALJ concluded that Plaintiff's allegations that she had totally disabling impairments from July 2001 to August 2002 were neither credible nor consistent with the record as a whole.

**A.   Substantial evidence supports the ALJ's finding that Plaintiff's disability ceased in July 2001, and that her entitlement to DIB properly ended in September 2001.**

Substantial evidence "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ affirmed the SSA's decision to discontinue Plaintiff's benefits as of September 2001 based on medical reports of Plaintiff's treating physicians as well as those of consultive examiners. Continued entitlement to DIB is reviewed periodically, and the benefits can be terminated if there is substantial evidence that a person's medical condition has improved to such an extent that he or she is able to work. 20 C.F.R. §404. 1594(a). "Medical improvement" is defined as any decrease in the medical severity of the impairments which were present at the time of the most recent favorable medical decision that a claimant was disabled or continued to be disabled (a process called "comparison point decision"). 20 C.F.R. §404. 1594(b)(1). This determination is based on changes or improvements in the symptoms, signs and/or laboratory findings associated with the impairments. 20 C.F.R. §404.1594(b)(1), (7).

    Plaintiff's Crohn's disease had improved prior to July 2001 in comparison with her condition as measured at the comparison point decision on May 28, 1997. In order to satisfy the clinical criteria of then applicable Section 5.07 of the Listing of Impairments, Plaintiff's Crohn's disease must have been accompanied by evidence of persistent or recurrent intestinal obstruction, or persistent or recurrent systemic manifestations, or intermittent intestinal obstruction, or weight loss, as described under then applicable section 5.08 of the Listing of Impairments. (Tr. 24). At the comparison point decision date in 1997, Plaintiff had frequent daily attacks of Crohn's disease despite prescribed treatment with medication including steroids. She had active inflammatory bowel disease as confirmed by a colonoscopy. She also had significant weight loss, and she was experiencing three to four bowel movements daily. (Tr. 27).

    However, during the relevant period from July 2001 to August 2002, none of the medical

8

reports in the record demonstrated the presence of any of these symptoms. In May 2000, Dr. Lupovici, Plaintiff's treating physician, noted that Plaintiff no longer had chronic diarrhea and that she no longer needed prescribed medication.  He also noted that she had not required any hospitalization for inflammatory bowel disease, and that a colonoscopy performed in September 2001 indicated only old inflammatory bowel disease.  Her abdomen and bowel movements were within normal limits. (Tr. 247).   Moreover, in order to meet the requirements of Section 5.08 of the Listing of Impairments, as then applicable, Plaintiff's body weight had to be equal to or less than 107 pounds; her weight at the time of the ALJ's decision was stable at 132 pounds.

If there is medical improvement since the most recent favorable comparison point decision related to a claimant's ability to work, the ALJ must make a determination as to whether the claimant has the residual functional capacity based on his or her current impairments to return to his or her past relevant work, or other work existing in significant numbers in the national economy. 20 C.F.R. §404.1594(f)(7),(8).  *See also, Godwin v. Barnhart*, 2005 U.S. Dist. LEXIS 14447 (S.D.N.Y. July 18, 2005).  Plaintiff was found to be able to frequently lift and carry objects weighing up to ten pounds, stand and walk for at least two hours in an eight-hour work day, and sit for about six hours at a time. (Tr. 280).  Plaintiff's past relevant work, as performed by her, involved primarily sedentary level job duties.  Most of the time, her work required her to sit at a computer and she was in a sitting position more than she was on her feet.  The heaviest item she was required to lift was a ream of paper. (Tr. 464).  Thus, during the period in question, there is sufficient evidence to support the ALJ's finding that had the physical capacity to perform her past relevant work.

**B.     Plaintiff's entitlement to a trial work period was not addressed in the ALJ's**

**decision.**

Plaintiff also contends that she was entitled to a trial work period from July 2001 to August 2002, and that as such, the SSA prematurely discontinued her benefits in September 2001.  A "trial work period" lasts nine months and allows a claimant to test his or her ability to work, while retaining a designation of "disabled." 20 C.F.R. §404.1592(a).  The trial work period can begin as soon as a claimant is entitled to disability insurance benefits, but it ends as soon as there is new evidence that shows that a claimant is no longer disabled, even if that is before the end of the nine-month period. 20 C.F.R. §404.1592(e)(3).

Here, on April 11, 2004, the Appeals Council remanded the case back to ALJ Noorigian stating that "a finding of cessation of disability on the basis of performance of substantial gainful activity, in the instant case, does not represent a step in the appropriate evaluation (see 20 C.F.R.404.1594(f)) and would require consideration of entitlement to trial work period months." (Tr. 381).  In his decision following remand on October 28, 2004, ALJ Noorigian stated that determining whether Plaintiff was entitled to a trial work period was irrelevant because the work she performed during the time frame in question was considered to be substantial gainful activity. (Tr. 399).  Plaintiff appealed that decision as well, and on August 1, 2005, the Appeals Council again suggested that Plaintiff might be entitled to a trial work period, and remanded the case to ALJ De Steno. However, ALJ De Steno does not address Plaintiff's entitlement to a trial work period in his December 16, 2005 decision denying Plaintiff benefits for the time period in question.

**V.    Conclusion.**

For the aforementioned reasons, and after a careful review of the record, the Court finds

substantial evidence to support the ALJ's decision to deny Plaintiff disability benefits for the time period in question.  There is substantial evidence in support of the ALJ's determination that Plaintiff had the residual functional capacity to perform her past relevant work.  However, the ALJ did not address the issue of Plaintiff's entitlement to a trial work period.  Accordingly, this Court will affirm the ALJ's ruling that Plaintiff's DIB were properly terminated in September 2001, but remand the case for the ALJ to make a decision as to whether or not the evidence supports Plaintiff's claim that she was entitled to a trial work period starting in July 2001.  An appropriate order will issue.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**